IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN A. BLAIR, | ) | |
|         Plaintiff, | ) | |
| | ) | |
|     v. | ) | 2:09-CV-1501 |
| | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
|         Defendant. | ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the cross-motions for summary judgment (Docket Nos. 11 and 13) be denied without prejudice and that the matter be remanded to the Commissioner for further evaluation and consideration.

II.    Report

Presently before the Court for disposition are cross motions for summary judgment.

On November 10, 2009, Jean R. Blair by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g), for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423.

On September 14, 2007, the plaintiff filed an application for disability benefits alleging that she had been disabled since May 8, 2007 (R.112-114), and benefits were denied on November 28, 2007 (R.81-84). On December 19, 2007, the plaintiff requested a hearing (R.85-

86) and pursuant to that request a hearing was held on April 28, 2009 (R.40-78). In a decision dated June 29, 2009, benefits were denied (R.9-21), and on August 19, 2009, reconsideration was requested (R.102). Upon reconsideration and in a decision dated October 7, 2009, the Appeals Council affirmed the prior determination (R.4-6). On November 10, 2009, the instant complaint was filed.

      In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his burden of demonstrating that he was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

      It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

      Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

      At the hearing held on April 28, 2009, (R.40-78), the plaintiff appeared with counsel (R.42) and testified that she completed the twelfth grade and cosmetology school (R.44) and that she last worked in May 2007 when she terminated employment for medical reasons (R.44, 46).

The plaintiff also testified that she has had three spinal surgeries (R.45); that she experiences constant neck, back, leg and arm pain (R.47, 51, 64, 68); that she also experiences depression (R.47); that she takes medication when suffering pain (R.49-50, 62); that she performs light household chores (R.59, 61, 66) and that she can sit for a few hours, is able to walk and rests during the day (R.61,66).

At the hearing a vocational expert was called upon to testify (R.72-77). She described the plaintiff's former employment as a light job which is semi-skilled in nature (R.72). When asked to assume an individual who could perform sedentary work, the witness testified that such an individual could not perform the plaintiff's prior employ (R.73). However, she also responded that such an individual would be able to engage in a large number of other forms of work (R.73-75). The witness also testified that any of those jobs would require being able to work for eight hours (R.76) and would not permit three or more unscheduled absences (R.77).

The issue before the Court for immediate resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff was not disabled within the meaning of the Act.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff was not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed.

The plaintiff was hospitalized at UPMC-Presbyterian Hospital from July 10, 2006 through July 10, 2006 for a left L4-L5 diskectomy (R.244-250).

The plaintiff was hospitalized at UPMC-Presbyterian Hospital from July 16, 2006 through July 18, 2006 for radicular pain treatment (R. 236-243).

The plaintiff received neurosurgical treatment between June 15, 2006 and August 17, 2006 from Dr. William C. Welch who diagnosed a ruptured L4-L5 disc and recommended a

diskectomy. After a follow-up examination on August 17, 2006, the doctor recommended physical therapy and a return to work in two weeks (R.190-192).

The plaintiff was hospitalized at UPMC-Presbyterian hospital from May 8, 2007 through May 12, 2007 for recurrent lumbar spondylosis and a herniated nucleus pulposus. A laminectomy with fusion was performed (R.228-235).

The plaintiff was treated by Dr. Sanat C. Shroff between April 18, 2005 and June 19, 2007 for a lump under her left arm. A CAT scan performed on June 19, 2007 failed to reveal any mass (R.185-189).

The plaintiff attended physical therapy between August 12, 2006 and June 27, 2007 at the Valley Outpatient Rehabilitation Center (R.195-216).

The plaintiff received outpatient physical therapy between July 30, 2007 and September 6, 2007 (R.267-279, 347-359).

The plaintiff was hospitalized at UPMC-Presbyterian Hospital from August 2, 2007 through August 4, 2007 for cervical spondylosis with myelopathy. A diskectomy with decompression was performed (R.217-227).

In a report of neurosurgical evaluations conducted between April 9, 2007 and September 6, 2007, it is noted that the plaintiff continued to improve post-surgeries and physical therapy and medication were prescribed (R.262-266).

The plaintiff was treated for depression on October 29, 2007 (R.280).

After reviewing the medical evidence and in a residual functional capacity assessment completed on November 21, 2007, it is noted that the plaintiff could occasionally lift ten pounds,

frequently lift ten pounds, and stand or walk for about two hours and sit for about six hours. It was concluded that the plaintiff's complaints were exaggerated (R.281-287).

The plaintiff was treated by Dr. David Okonkwo between December 12, 2006 and July 17, 2008 for leg and low back pain. Two spinal fusions were performed. It was reported that the plaintiff's back pain continued and on January 31, 2008 it was recommended that she remain off work (R.153-184; 288-318).).

In a report dated January 22, 2009 and covering treatment of her cervical and lumbar spine rendered since April 2007, Dr. Okonkwo reported that the plaintiff continued to experience severe pain in her neck, arms, back and legs although her conditions was improving. He concluded that the plaintiff was disabled from pursuing gainful employment (R.98, 373).

The plaintiff was treated by Dr. Schroff between December 11, 2008 and February 16, 2009 for anxiety and back pain (R.374-378).

The plaintiff was treated by Dr. Okonkwo between January 23, 2009 and February 23, 2009 for pain (R.379-385).

In a report dated May 30, 2008, Dr. Okonkwo diagnosed cervical and lumbar radiculopathies manifesting in neck, back, leg and arm pain (R.360-372).

The plaintiff was treated by Dr. Sanat Scoff between June 23, 2008 and October 23, 2008 for left foot pain, sinus pain, anxiety and depression. Medication was prescribed (R.321-346).

In a report dated September 11, 2008, Dr. Okonkwo noted a report of the return of arm, leg, groin and back pain. Conservative treatment was recommended (R.319-320).

In reviewing a disability claim, in addition to considering the medical and vocational evidence, the Commissioner must consider subjective symptoms.  Baerga v. Richardson, 500

F.2d 309 (3d Cir. 1974).  As the court stated in Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971):

> Symptoms which are real to the claimant, although unaccompanied by objective medical data, may support a claim for disability benefits, providing, of course, the claimant satisfies the requisite burden of proof.

In Good v. Weinberger, 389 F. Supp. 350, 353 (W.D. Pa. 1975), the Court stated:

> Bittel seeks to help those claimants with cases that so often fall within the spirit--but not the letter--of the Act.  That plaintiff did not satisfy the factfinder in this regard, so long as proper criteria were used, is not for us to question.

The applicable regulations require more explicit findings concerning the various vocational facts which the Act requires to be considered in making findings of disability in some cases.  The regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims.  In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity.  If not, then the severity of the plaintiff's impairment must be considered.  If the impairment is severe, then it must be determined whether he meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability.  If the impairment does not meet or equal the Listings, then it must be ascertained whether he can do his past relevant work.  If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file.  The finding of residual functional capacity is the key to the remainder of findings under the new regulations.  If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he can exert in engaging in work activity), and if his impairment enables him to do sustained work of a sedentary, light or medium nature, and the findings of age, education and

work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

> Based on the evidence presented, the Commissioner concluded:
>
> The claimant's medically determinable mental impairments of depression and anxiety do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are, therefore, non-severe...
>
> [T]he evidence indicates that the claimant has ... no limitation in activities of daily living; mild difficulties regarding social functioning; mild difficulties regarding concentration, persistence or pace; and the claimant has experienced no episodes of decompensation which have been of extended duration.
>
> * * *
>
> Consideration has been given to all of the claimant's musculoskeletal system complaints ... None of the medical findings concerning the claimant's impairment meet or equal the criteria for severity in any of those listings.
>
> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work ... except she is unable to perform any pushing or pulling with her upper or lower extremities, and she can perform no more than occasional overhead reaching. Additionally, the claimant must be permitted to alternate sitting and standing as needed throughout the work day...
>
> The claimant testified that she has had to undergo three different back surgeries during an 18-month span of time, returning to her work as a hair stylist after her first back surgery in 2006, but not after her second in May 2007. The claimant says she required both lumbar and cervical surgeries, and she admits that, after attending physical therapy, by the end of 2007, her pain was not as severe. The claimant says her pain is worse when she overdoes things...

>Although the claimant indicates chronic pain, she also acknowledges that she does not take pain medications on a regular basis...
>
>After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible...
>
>Treatment records from David Okonkwo, M.D., Ph.D., the claimant's treating neurosurgeon since April 2007, indicate that while recovering from her second back surgery, the claimant began to develop problems with left arm pain and hand numbness that required her to undergo a C5-6 and C 6-7 anterior cervical diskectomy and fusion...
>
>Dr. Okonkwo's records indicate that by September 2007, the claimant's left arm pain and hand numbness had "significantly improved", although the claimant was experiencing some new episodes of right arm pain; however, her motor examination was intact, with some evidence of only a slight Hoffman's sign in both upper extremities...
>
>The claimant developed some back pain radiating into her groin in April 2008 ... Examination of the claimant in July and August 2008 showed her to be "doing quite well", with only rare, intermittent pain, and with normal gait and strength in all extremities, and the claimant was taking no pain medications...
>
>Following her physical therapy in September 2008, the claimant reported more stiffness than pain, and pain that was only intermittent...
>
>The undersigned Administrative Law Judge is aware that by letter dated January 22, 2009, Dr. Okonkwo opined that the claimant's condition "has disabled her from pursuing gainful employment".  This opinion is given little weight for several reasons. First, statements that a claimant is "disabled", "unable to work", can or cannot perform a past job ... are not medical opinions but are administrative findings ...
>
>Although Dr. Okonkwo is the claimant's treating neurosurgeon, he has not provided laboratory or clinical findings to support his conclusions ...  Although Dr. Okonkwo opines that the claimant is disabled, the actual functional limitations he cites -- "unable to tolerate extended periods of standing, walking, or other activities" -- do not preclude the performance of the reduced form of sedentary work ...
>
>Instead ... [I] adopt the limitations set forth by State non-examining medication sources Alu N. Ali, M.D...

> The claimant admits the continuing ability to perform numerous physical daily activities.
>
> * * *
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled" is therefore appropriate ...  (R.11-18).

The record demonstrates that while the plaintiff suffers from some minor mental impairments she has had significant skeletal involvement requiring three surgeries. Following her second surgery, her treating neurosurgeon concluded that she was disabled from engaging in sustained gainful employment specifically stating "I believe that Ms. Blair's condition has disabled her from pursuing gainful employment. She will continue to require medical treatment on an ongoing basis including chronic pain management..."(R.373). There is no evidence of record, other than the conclusion of a non-examining agency physician that the plaintiff's claim are exaggerated (R.281-287). Under these circumstances, it cannot be concluded whether or not the plaintiff meets the necessary criteria for establishing a disability.

Summary judgment is appropriate when there are no disputed material issues of fact, and the movant is entitled to judgment as a matter of law.  Biener v. Calio, 361 F.3d 206 (3d Cir. 2004).  In the instant case, it would appear that there is need for further medical evaluation of her condition, and for this reason, it is recommended that the cross-motions for summary judgment be denied without prejudice and that the matter be remanded to the Commissioner for further evaluation and consideration.

Within fourteen (14) days after being served with a copy, any party may serve and file written objections to the report and recommendation.  Any party opposing the objections shall

have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                Respectfully submitted,

                s/ ROBERT C. MITCHELL,
                United States Magistrate Judge

Dated: April 14, 2010