IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEAN A. BLAIR,<br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | 2:09-cv-1501 |

Supplement to Report and Recommendation

On November 10, 2009, the plaintiff commenced this action seeking to challenge the Commissioner's denial of her claim for disability insurance benefits. In a Report and Recommendation filed on April 14, 2010, we recommended that the matter be remanded for further medical evaluation. The defendant filed objections to the Report and Recommendation and for this reason, we further develop the medical evidence of record to demonstrate why a remand is appropriate.

At the hearing held on April 28, 2009 (R.40-78), the plaintiff appeared with counsel (R.42) and testified that she completed the twelfth grade and cosmetology school (R.44) and that she last worked in May 2007 when she terminated employment for medical reasons (R.44, 46). She also testified that she has had three spinal surgeries (R.45); that she experiences constant neck, back, leg and arm pain (R.47, 51, 64, 68); that she also experiences depression (R.47); that she takes medication when suffering pain (R.49-50, 62); that she performs light household chores (R.59, 61, 66) and that she can sit for a few hours, is able to walk and rests

1

during the day (R.61,66). The vocational expert who testified at the hearing observed that if able to perform sedentary work there were a large number of occupations in which the plaintiff could be employed (R.73-75). However, the vocational expert also testified that if the plaintiff was subject to frequent absences she could not be employed (R.77). Thus, it becomes critical to determine whether or not there is substantial record evidence to support the Commissioner's conclusion that the plaintiff's medical condition did not prevent her from engaging in gainful employment.

The plaintiff's first surgery occurred on July 10, 2006. At that time a left L4 hemilaminectomy, a left L4 and L5 nerve root foraminotomy , and L4-5 diskectomy was performed. At the time of her discharge, the plaintiff was to avoid all strenuous activity and bending or sitting for prolonged periods of time (R.244-250). The plaintiff was subsequently hospitalized for radicular pain on July 16, 2006. At that time there were postoperative changes observed at L4-5 with residual protrusion into the foramen.

The plaintiff's treating neurologist during the above time period noted on August 17, 2006 that the plaintiff appeared to be doing reasonably well, recommended physical therapy and reported that the plaintiff could return to work in two weeks (R.190). The plaintiff then commenced a period of physical therapy that lasted until September 6, 2007 (R.217-227, 262-266). However, she was rehospitalized in August 2007 where a C5-6 protrusion was noted and a diskectomy with decompression was performed (R.217-227).

A neurosurgical evaluation conducted on September 6, 2007 notes that the plaintiff had to be hospitalized on August 2, 2007 where imaging noted "significant disc herniations at multiple levels of her cervical spine" and the last noted surgery was performed. At the time of the

evaluation it was observed that the plaintiff "continues to recover from her multi-level cervical discectomies and fusion. We are hopeful her symptoms will continue to improve in time. We did provide her with a prescription to begin physical therapy..." (R.262).

On November 21, 2007, the disability reviewing physician, who is a non-examining physician, concluded that the plaintiff's allegations were exaggerated based on the evidence of record (R.286-287).

During this same relevant period the plaintiff was treated by her neurosurgeon, Dr. David Okonkwo, who reported performing two spinal fusions. He reported on April 9, 2007, that the plaintiff's lower extremity pain was worsening and expressed his concern about nerve root compression secondary to her L4-5 disc herniation, and on April 26, 2007 noted that the plaintiff continued to be symptomatic resulting in her May 8, 2007 lumbar interbody fusion. Based on his course of treatment, the doctor stated on January 22, 2009:

> Ms. Blair has been under my care since April 2007 for severe spondylosis of both her cervical and lumbar spine. Ms. Blair has had a number of operations to address her condition; the most recent of which was a redo posterior lumbar decompression and fusion in May 2007 followed later by an anterior cervical decompression and fusion in August 2007. She has been fully compliant with all prescribed treatments and has been diligent in her attempts at rehabilitation. Nevertheless, she remains with severe pain both in her neck and arms as well as her back and legs, although she has improved over her preoperatively state.
>
> As a result of her condition, Ms. Blair has severe limitations in her capacity to work as she is unable to tolerate extended periods of standing, walking, or other activities.
>
> I believe that Ms. Blair's condition has disabled her from pursuing gainful employment. She will continue to require medical treatment on an ongoing basis including chronic pain managements with oral pain medication.
>
> Please note the above is provided within a reasonable degree of medical certainly [sic] (R.373).

On January 22, 2009, Dr. Okonkwo reported that "as a result of her condition, Ms. Blair has severe limitations in her capacity to work as she is unable to tolerate extended periods of standing, walking, or other activities."(R.385). On February 23, 2009, the same doctor reported that the plaintiff's "spinal cord does not appear to be under severe compression and there is no significant bilateral neuroforaminal stenosis " (R.383).

Thus, the record is replete with evidence from plaintiff's treating neurosurgeon that she has suffered severe pain over a considerable period of time; that she has required three spinal surgeries and that as recently as January 22, 2009, she continued to experience severe limitations on her physical abilities. While the doctor did observed that the plaintiff's spinal cord was not under a severe compression, there is nothing in the record demonstrating that this statement negates his prior conclusions. Thus, there is no evidence of record, other than that of a non-examining physician, to counter the evidence of the severity of the plaintiff's condition. Rather, the plaintiff's symptoms are clearly supported by the evidence from her treating physician.

While we recognize that the ultimate decision rests with the Commissioner, that conclusion is binding on the courts only if supported by substantial evidence. This deferential standard is less than a preponderance of the evidence but more than a mere scintilla. <u>Jones v. Barnhard</u>, 364 F.3d 501, 503 (3d Cir.2004). In the instant case, we cannot say with any degree of assurance that the Commissioner's conclusion is supported by substantial evidence, but rather conclude that a more thorough evaluation is required to reach any definitive conclusion. Rather at this juncture it appears that only by ignoring the ongoing medically supported evidence supplied by the treating physician that a conclusion of "not disabled" can be drawn. For this reason, we recommended that the matter be remanded for further evaluation and consideration.

Within fourteen (14) days after being served, any party may serve and file written objections to this Supplement to the Report and Recommendation. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
Entered: June 9, 2010          United States Magistrate Judge